IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RENAE REYNOLDS, )
) No. 8-268
Plaintiff, )
)
v.

PORT AUTHORITY OF ALLEGHENY COUNTY,

Defendant.

## OPINION AND ORDER

### SYNOPSIS

In this civil action, Plaintiff, an African-American woman, claims that Defendant Port Authority of Allegheny County ("PAT"), her former employer, violated Title VII of the Civil Rights Act, 42 U.S.C. §2000e, 42 U.S.C. §1981, and the Pennsylvania Human Rights Act ("PHRA"), 43 Pa. C.S.A. §951, et seq. Her claims sound in race and gender discrimination, and retaliation. The facts will be developed in the body of the Opinion, and are undisputed unless otherwise indicated.

Before the Court is Defendant's Motion for Summary Judgment. For the following reasons, the Motion will be granted.

### OPINION

**I. Applicable Standards**

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. V. Stauffer Chem . Co.</u>, 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. <u>United States v. Onmicare, Inc.</u>, 382 F. 3d 432 (3d Cir. 2004). Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).

The sum of the affirmative evidence to be presented by the non-moving party must be such that a reasonable jury could find in its favor; it cannot simply reiterate unsupported assertions, conclusory allegations, or suspicious beliefs. <u>Croman v. Twp. of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995). Otherwise stated, a "party cannot rely upon self-serving conclusions, unsupported by specific facts in the record." <u>LaResca v. AT&T</u>, 161 F.Supp. 2d 323, 327 (D.N.J.2001). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50, 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986) (citations omitted).

Local Rule 56.1. provides as follows:

> Alleged material facts set forth in the moving party's Concise Statement of Material Facts...which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

Accordingly, "lack of knowledge" denials, unsupported in the record, may be ignored for purposes of summary judgment. Cf. Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 U.S. Dist. LEXIS 18324, at *10 (W.D. Pa. Aug. 26, 2005). A party seeking judgment on grounds that a particular fact is undisputed is entitled "to demand at least one sworn averment of that fact before the lengthy process of litigation continues." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1990).

## II. Defendant's Motion

### A. Discrimination in Hiring/Promotion

I first address Defendant's challenge to Plaintiff's discrimination claim regarding her failure to obtain either a Signal Maintainer or Signal Maintainer Trainee position. The Signal Maintainer issue surrounds a June, 2005 "system pick," in which bargaining unit employees were able to bid on open positions within the Port Authority. Plaintiff characterizes her claim as one for disparate treatment "when compared to caucasian males who applied for Signal Maintainer positions."

#### 1. Prima Facie Case

Initially, Defendant argues that it is entitled to judgment on Plaintiff's claim, because Plaintiff did not apply for the Signal Maintainer position. According to Defendant, this failure is fatal to Plaintiff's prima facie case of disparate treatment.

As part of a prima facie case in this context, the plaintiff must show that she communicated to the employer her interest in the position. Parker v.

University of Pa., 128 Fed. Appx. 944, 946 (3d Cir. 2005) (Title VII); Langley v. Merck, 186 Fed. Appx. 258, 261 (3d Cir. 2006) (§1981).[1] In order to meet this threshold, a plaintiff need not have formally applied for a position.

> [T]he failure of a plaintiff to formally apply for a position does not necessarily preclude him or her from maintaining a discriminatory failure-to-hire/failure-to-promote case under a federal anti-discrimination statute. In order to maintain an action, however, a plaintiff must show that his or her interest in the relevant position was known to his or her employer, or that the employer used a secretive selection process in order to prevent members of a statutorily protected class from applying.

Burrows v. Twp. of Logan, No. 5-458J, 2008 U.S. Dist. LEXIS 71495, at **18-19 (W.D. Pa. Sept. 17, 2008).

In this case, it is undisputed that Plaintiff elected not to bid for the open position, and did not ask to be placed on the list for future open Signal Maintainer jobs.[2] Instead, she bid on a Substation Maintainer position, and was considered for that position. She has neither averred nor presented evidence that she in fact wished to be considered for a Signal Maintainer position, or that Defendant was made aware that she wished to be so considered. Plaintiff suggests, at this point, that she wished to obtain a Signal Maintainer Trainee position, but there is no evidence that the Trainee position – as opposed to the Signal Maintainer position – was made available for direct bidding, or that she

---

[1] The PHRA, too, is generally considered coextensive with its federal counterparts. Stepp v. Fairpoints Communs., Inc., No. 06-576, 2007 U.S. Dist. LEXIS 88302 (W.D. Pa. Nov. 30, 2007).

[2] A "bypass test" was available for current employees who did not meet the minimum requirements for a position, but who believed that they had the requisite knowledge to perform the position.

communicated to Defendant that she wished to be considered for that position.³ Her contention that she was unaware of the Trainee position at the time of the system pick counters any contention to the contrary.

Absent her application for either position, then, Plaintiff must show that Defendant used a particular selection process in order to prevent women or African-Americans from applying. In this vein, Plaintiff contends that Defendant failed to inform her of the Trainee position, either via posting the position or when she called in to the system pick. It is undisputed that seven days prior to the system pick, Plaintiff's supervisor received an e-mail directing him to post an attached Signal Maintainer Trainee notice, and that he subsequently posted the document in Plaintiff's building. Plaintiff proffers only that she never saw the notice. To the extent that Plaintiff intends to suggest that the posting was somehow done improperly, she does not propose that the manner of posting affected, or was intended to affect, any particular group of employees. She does not dispute that every employee received the same notice. Evidence regarding the posting of the Trainee position, then, does not fulfill Plaintiff's initial burden.

Plaintiff also intimates that she received misleading information, which could suggest an improper selection process. In that regard, Plaintiff proffers contradictory assertions: she states that "no one even mentioned the Keystone Signal Training course to her," but also avers that during the system pick, she was informed that a bypass test was required "by Keystone, a state-funded program

---

³The Call-in Schedule for Open Jobs reflects a time to bid on Signal Maintainer positions; Defendant explains that those bidding on that position could then be offered to participate as a Trainee. There is no evidence that one could, or that any employee did, bid directly on a Trainee position.

that provided three training positions," and that she would not be eligible for the training if she passed the bypass test. Plaintiff relies on the latter to suggest that she received incorrect information – i.e., that the training program required her to take a bypass test. Although it is not entirely clear from the record, this may be inaccurate.[4] The record, however, is devoid of any suggestion that any other employee received different information when they called into the system pick, or any other evidence that would imply the discriminatory or selective dissemination of information regarding the trainee program. Absent such evidence, the bare information received by Plaintiff is insufficient, taken alone, to reasonably raise any inference or suspicion that Defendant utilized an improper selection process. Negligence, innocent error, or incompetence does not constitute discrimination. See Chiang v. Schafer, No. 2000-04, 2000 U.S. Dist. LEXIS 64654, at *122 (D.V.I. Aug. 20, 2008). For these reasons, Plaintiff has failed to adduce evidence required to support her claim for disparate treatment in failing to award her a Signal position.

## 2. Defendant's Explanation

Even if Plaintiff met her prima facie case, the claim would fail at the next stage of analysis. Title VII and Section 1981 employment discrimination claims are analyzed under the burden-shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Stewart v. Rogers, 120 F.3d 426, 432 (3d Cir. 1997). Under that scheme, If the plaintiff meets her prima facie

---

[4] The record reflects, however, that an employee who passed the bypass test would be placed directly into a Signal Maintainer position, rather than a training position.

case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its conduct.  McDonnell Douglas, 411 U.S. at 802.  An employer satisfies its burden of production by introducing evidence that would permit the conclusion that there was a nondiscriminatory reason for its actions.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  The employer need not prove that the tendered reason actually motivated its behavior, and the Court must accept the proffer without measuring its credibility.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); Texas Dept. Of Comm. Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981).

Here, Defendant has met its relatively light burden, in response to Plaintiff's allegation that she was treated differently than eight caucasian males.  Defendant explains, initially, that Plaintiff was not awarded the Signal Maintainer position, or the Signal Maintainer Trainee position, because she did not bid for Signal Maintainer.   Unlike Plaintiff, the three internal employees who received Signal positions during the June, 2005 pick -- Glen Sahr, William Borowsky, and Greg Reagan -- all bid for Signal Maintainer during the pick.  Because they had bid on those positions, they were considered for the positions and given the opportunity to enter Signal Maintainer Trainee positions.

Additionally, Defendant explains that the remaining five employees to which Plaintiff presumably refers – Jeff Josey, Dan O'Donnell, Paul Deiseroth, John Barcala, and Brian McHale –  were external hires, who met the minimum

requirements for the jobs for which they were hired in 2004.[5]  External hires were required to have the requisite qualifications for the pertinent job, and did not have the option of taking a bypass test.  Moreover, none of the men were hired into the Signal Maintainer Trainee position, because the program was not in place in 2004.  These facts are undisputed, and suffice to meet Defendant's burden under McDonnell Douglas.

### 3. Pretext

Once an employer presents evidence of a legitimate reason for its actions, the burden shifts back to Plaintiff to show that the proffered reason is a pretext for discrimination.  Iadimarco v. Runyon, 190 F.3d 151, 158 (3d Cir. 1999).  To do so, a plaintiff must submit evidence from which a reasonable fact finder could either disbelieve the employer's articulated legitimate reasons; or conclude that discrimination was more likely than not a motivating or determinative cause of the employer's action. See Fuentes, 32 F.3d at 762.

> To discredit the employer's proffered reason, ...the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is...not whether the employer is wise, shrewd, prudent or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence....

Id. at 765.

Plaintiff proffers several arguments that potentially bear on the issue of

---

[5]The remaining three external hires in 2004 – Margerum, Minnaji, and Griffith – were not hired as Signal Maintainers.

pretext. Primarily, Plaintiff contends that she was treated differently than caucasian males, in respects other than the filling of Signal Maintainer positions mentioned supra.[6] "Where evidence of allegedly disparate treatment meted out to 'similarly situated' employees outside of the protected class is relied upon, those individuals must 'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" Davis v. City of Phila. Water Dep't, 57 Fed. Appx. 90, 92 (3d Cir. 2003).

"Similarly situated" means similar in all relevant respects; absent such similarity, the evidence is not probative. Saellam v. Norfolk Southern Corp., No. 06-0123, 2008 U.S. Dist. LEXIS 103207, at *25 (W.D. Pa. Dec. 19, 2008). Determining whether another employee was similarly situated to Plaintiff requires a fact-intensive assessment of factors relevant to the particular workplace. Monaco v. American Gen. Assur. Co., 359 F.3d 296, 305 (3d Cir. 2004). Plaintiff bears the burden of proving that she was treated differently than similarly situated persons. Foxworth v. Pennsylvania State Police, 228 Fed. Appx. 151, 158 (3d Cir. 2007).

Circling back to Plaintiff's prima facie case, Plaintiff alleges that eight male caucasians were given Signal positions, without holding the proper licensure, or

---

[6]Defendant raises the issue of differential treatment in the context of pretext. Therefore, I do the same. Nonetheless, differential treatment is part of Plaintiff's prima facie case as well. Plaintiff must demonstrate circumstances that permit an inference of unlawful discrimination. Kerns v. Drexel Univ., No. 06-5575, 2008 U.S. Dist. LEXIS 57358, at (E.D. Pa. July 24, 2008). Here, Plaintiff relies on disparate treatment. Therefore, failure to demonstrate differential treatment bears on deficiencies in Plaintiff's prima facie case.

without bypass testing.[7] In particular, Plaintiff contends that the awardees, presumably including the aforementioned people awarded Signal positions in 2004 and 2005, did not hold the appropriate Commercial Drivers License ("CDL") for their positions. It is undisputed, however, that the CDL was not a prerequisite to pertinent hiring between 2002 and 2006, when the employees to which Plaintiff points were placed in Signal positions.[8] Plaintiff claims that the job requirements in place for external hires during this time were somehow "invalid" because PennDot, and not Defendant, determines the type of licensure required for a particular job, and because the requirements conflict with a Union agreement. She does not, however, aver that her own licensure was at issue at any time during or after the system pick – for example, she was not told that she was required to have a CDL -- and otherwise fails to explain the initial relevance of the supposed invalidity of the job requirements in place at that time.[9]

Additionally, Plaintiff also proffers her own statement, made in response to a Request for Admission, that another caucasian male employee, Dan

---

[7]As discussed supra, five of the employees to which Plaintiff presumably refers were not similarly situated to Plaintiff, as they were external hires and were hired in 2004, rather than during the 2005 system pick. Similarly, the three internal employees who were placed in Signal positions during the 2005 system pick had all, unlike Plaintiff, bid on Signal Maintainer. I cannot, therefore, find that Plaintiff was similarly situated to these people. In any event, Plaintiff does not allege that these three employees were provided with any information different than the information she received during her system pick call-in, that they received different notice of the trainee program, or that they received or were offered study materials for a bypass test.

[8]In 2005, the job description for Signal Maintainer required the following:
"Trade Certification or equivalent and two (2) years of directly related work experience in an electrical/electronic trade; or four (4) years of directly related work experience within the past ten (10) years; or successful completion of Port Authority's Maintenance Apprenticeship Program (MAP) or pass the appropriate bypass test for internal maintenance employees."

[9]She also avers that an employee was provided with a fraudulent license, but fails to explain the import of this allegation, even if true.

Hillgartner, failed the bypass test and was permitted to take the test a second time. In the first instance, given that Plaintiff elected not to take the bypass test at all, and therefore Plaintiff was not, in fact, denied an opportunity to retake the test, this evidence is of questionable relevance. Moreover, it is undisputed that Mr. Hillgartner did not take the test twice in relation to a single system pick. His situation, and the information provided to Plaintiff, was therefore consistent with the Defendant's policy to limit each employee to one bypass test per "event," including system picks. As a final matter, the record is devoid of any information with which to evaluate whether Mr. Hillgartner was similarly situated to Plaintiff, or with which to gauge his probative value to this case. Accordingly, Mr. Hillgartner's repeated bypass testing is insufficient to cast doubt on Defendant's explanation.

Similarly, Plaintiff identifies an internal employee, Greg Reagan, as a comparator in the Signal Maintainer context. Mr. Reagan, unlike Plaintiff, bid on a Signal Maintainer position during the June 2005 system pick. He was initially awarded a Trainee position, then it was determined that he met the minimum qualifications for Signal Maintainer, and was pulled from the training program and placed directly into the Signal Maintainer position. These facts do not suffice to establish pretext. Moreover, as with Mr. Hillgartner, Plaintiff has not proffered any information with which to assess whether Mr. Reagan was similarly situated to Plaintiff. In any event, the use of a single comparator is insufficient to cast doubt on Defendant's explanation. Whitaker v. Holy Family Soc. Servs., 309 Fed. Appx. 654 (3d Cir. 2009); Jafar v. Kings College, No. 3:04cv862, 2006 U.S. Dist. LEXIS

47943, at *18 (M.D. Pa. June 30, 2006).

Additionally, Plaintiff's recitation of her seniority, associate's degree in electronics, and experience with trolley switches suggests that she intends to argue that she was more qualified than the men awarded the position. This, however, is likewise insufficient to cast doubt on Defendant's explanations, particularly as Plaintiff proffers no evidence regarding the experience, education, or work history of the people placed in Signal positions. Again, the lack of such comparative evidence precludes the conclusion that Defendant treated Plaintiff differently because of her race or gender. Her seniority, experience, and education certainly render her well-qualified for many jobs; she does not, however, contend that they qualified her for the job she thinks that she should have been awarded. In any event, Plaintiff's own opinions and beliefs regarding her qualifications do not create a genuine issue of material fact regarding whether Defendant's proffered reasons are a pretext for discrimination. See, e.g., Holifield v. Reno, 115 F. 3d 1555, 1565 (11th Cir. 1997); Ost v. West Suburban Travelers Limousine, Inc., 88 F. 3d 435, 441 (7th Cir. 1996); Evans v. Technologies Applic. & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996).

Finally, Plaintiff appears to suggest that Defendant's conduct with respect to a particular document raises suspicions sufficient to avoid summary judgment. She avers that a document, setting forth the job description for Signal Maintainer, was not produced until close to the end of the discovery period, in mid-December, 2008. She argues that the late production prevented her from obtaining relevant information about the document. She argues that this

heretofore undiscovered information raises issues of fact.[10]  If Plaintiff required additional time to conduct discovery, however, she was free to request an extension of the January 14, 2009 deadline, or file a Rule 56(f) motion in connection with summary judgment.  Plaintiff proffers no explanation for her failure to do so.  Summary judgment is to be determined on the record before the Court; Plaintiff cannot avoid judgment based on facts that may or may not be uncovered with further discovery.

**B.  Discrimination in Restroom Use**

Next, I address Defendant's challenge to Plaintiff's racial discrimination claim[11] in the context of her allegations that a male supervisor used the women's restroom.  Plaintiff claims that the supervisor's restroom use "may have been racial harassment in the sense of ignoring the presence of African-Americans and not respecting their privacy," and that he only used the restroom in the presence of African-American employees.   In order to establish a prima facie case of racial discrimination, Plaintiff must present sufficient evidence to allow a reasonable factfinder to conclude that she was treated less favorably because of her race.  Hunter v. Rowan Univ., 299 Fed. Appx. 190, 194 (3d Cir. 2008).

---

[10]Plaintiff asserts that Greg Reagan moved from a minimal requirement position to a Signal position, and was not required to take a bypass test.  The facts, however, demonstrate a determination that Mr. Reagan met the minimum qualifications for a Signal Maintainer position.  In that case, it is undisputed that a bypass test would not be required. Plaintiff does not proffer contradictory evidence, other than her own conclusory statement.
    She cites as support to a settlement agreement that mentions neither Mr. Reagan's name nor the position of Signal Maintainer.  It is unclear how the document referred to supports her assertion.

[11]In her opposition to summary judgment, Plaintiff states that the actions regarding the ladies' room "must be viewed not by the legal criteria for sexual harassment but as racial harassment and degradation…."  As per Plaintiff's statement, I will assess the discrimination claim primarily as one grounded in race.

In this case, Plaintiff has not met the threshold.  Arnold Staples, an employee whose race is not of record, saw the supervisor in question exit the woman's locker room on one occasion.   Plaintiff testified that she knew that the supervisor had urinated in the ladies' room "on a number of occasions," because Sandra Harper, another employee, "had spoken to [Plaintiff]."[12]  Plaintiff never saw the supervisor do so.   Based solely on this evidence, Plaintiff contends that the supervisor's ladies' room-related conduct "occurred only in the presence of African-American employees." She does not produce evidence that he ever entered the restroom while she, or any other employee, was in the restroom.[13]  Other than entering a room marked for use by the other gender, Plaintiff presents no allegations that her supervisor engaged in any inappropriate bathroom-related behavior.[14]

In the first instance, assuming that the supervisor used or entered women's bathroom in the presence of Ms. Harper several times,  and once exited the bathroom in the presence of Mr. Arnold, this conduct absolutely cannot demonstrate that Plaintiff was treated unfavorably.   Again assuming that this behavior was more than merely antisocial, and could qualify as conduct of the

---

[12]There is no indication that Ms. Harper's testimony would be offered in a form admissible at trial.  Neither party proffers her deposition testimony or affidavit.  This testimony is likely inadmissible hearsay, and therefore inappropriate for consideration at this stage.  King v. City of New Kensington, 06-1015, 2008 U.S. Dist. LEXIS 76485 (W.D. Pa. Sept. 30, 2008).

[13]Plaintiff describes the bathroom at issue as a three-by-five-foot room, with a toilet next to the washbowl – i.e., not a multi-user facility.

[14]Were I to proceed with the McDonnell Douglas analysis, Defendant proffers the explanation that the supervisor in question was responsible for supervising the employees who worked on and maintained the bathrooms.  Plaintiff does not offer evidence or argument that would call this explanation into question.  Thus, her claim would fail at the pretext stage.

type contemplated by racial anti-discrimination laws, Plaintiff cannot bring a cause of action for unfavorable treatment visited on third parties. "[P]laintiffs generally may not vindicate the rights of others." McCain v. Abraham, No. 08-3375, 2009 U.S. App. LEXIS 12410, at *3 (3d Cir. Pa. June 10, 2009). Moreover, as with Plaintiff's other claims, there is no evidence of record to suggest differential treatment. There is no evidence, here, from which a reasonable factfinder could conclude that the supervisor's aberrant restroom habits constituted unfavorable treatment due to race.

### C. Retaliation

Next, I address Defendant's challenge to Plaintiff's retaliation claim, which also centers around her supervisor's use of the women's restroom. Plaintiff contends that she suffered retaliation "for preventing [her supervisor] from entering the Ladies' Room," by commenting that she did not want him to enter, or by blocking him from entering. Defendant contends that Plaintiff did not engage in protected speech prior to the alleged retaliatory conduct.

In order to establish a prima facie case of retaliation under Title VII or the PHRA, a plaintiff must demonstrate, inter alia, that she was engaged in protected activity. Abramson v. William Paterson College of N.J., 260 F.3d 265, 286 (3d Cir. 2001); Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). The anti-retaliation provisions of these statutes protect people who participate in pertinent proceedings, or who oppose discrimination made unlawful by statute. Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006). In order to support a claim of protected conduct, the employee must act under a good faith,

reasonable conclusion that a violation of law existed. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996).

Here, at the time she prevented her supervisor from entering the restroom or commented on his attempted entrance, Plaintiff does not allege that she believed that his conduct was illegal. In addition, no reasonable person could conclude that a few isolated incidents involving a man's use of the women's bathroom, without more – particularly when one did not witness the conduct – constituted unlawful harassment or discrimination. See Williams v. Russell Corp., 218 F. Supp. 2d 1283, 1296 (M.D. Ala. 2002). It is not objectively reasonable to believe that a supervisor's very occasional entrance into an otherwise empty ladies' room was proscribed by Title VII. Merely because Plaintiff baldly characterizes her conduct as protected does not make it so. Defendant is entitled to judgment on Plaintiff's retaliation claim.

### D. Hostile Work Environment

Next, I address Defendant's argument that Plaintiff cannot maintain a claim for hostile work environment. While it is not clear that Plaintiff intends to press such a claim, I will address Defendant's argument.[15]

In order to prevail on a hostile work environment claim, Plaintiff must demonstrate, inter alia, that she suffered intentional discrimination because of gender or race, that the discrimination was severe or pervasive, and that the

---

[15] As mentioned supra, Plaintiff states that the restroom issue should not be analyzed as sex discrimination; she also, however, avers that the restroom use "may be motivated by sex discrimination." For purposes of completeness, therefore, I will address a potential hostile work environment claim.

discrimination would detrimentally affect a reasonable person of the same sex in the same position. See Amati v. United States Steel Corp., No. 04-1442, 2007 U.S. Dist. LEXIS 82079, at *40 (W.D. Pa. Nov. 1, 2007).[16] To constitute a hostile work environment, the discriminatory conduct must be "permeated with 'discriminatory intimidation, ridicule, and insult' that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. at *42. Even offensive or objectionable conduct such as the sporadic or isolated use of abusive language or racial epithets, off-color jokes, and teasing, for example, do not support such a claim. See, e.g., Perry v. Harvey, no. 08-3339, 2009 U.S. App. LEXIS 12441, at *4 (3d Cir. June 5, 2009); Livingston v. Borough of McKees Rocks, 223 Fed. Appx. 84, 90 (3d Cir. 2007).

  A hostile work environment claim cannot be analyzed on an "incident-by-incident" basis; instead, a court must examine the totality of the circumstances. Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 715 (3d Cir. 1997); Anderson v. Deluxe Homes of Pa. Inc., 131 F. Supp. 2d 637, 644 (M.D. Pa. 2001). The law does not guarantee employees a perfect, or even pleasant, workplace. Lynch v. New Deal Delivery Service, 974 F.Supp. 441, 452 (D.N.J. 1997). The court may examine the frequency and severity of conduct; whether it is physically threatening or humiliating; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114

---

[16]Contrary to Plaintiff's suggestion, courts in this Circuit have declined to apply McDonnell-Douglas to hostile work environment claims. Ogilvie v. Northern Valley EMS, Inc., 07-485, 2008 U.S. Dist. LEXIS 87913 (E.D. Pa. Oct. 29, 2008).

S. Ct. 367, 126 L. Ed. 2d 295 (1993).

In this case, Plaintiff's sexual or racial harassment claim centers around her supervisor's entries into the women's bathroom. It is clear that the conduct complained of does not rise to the level required by a hostile work environment claim. The conduct was not frequent or severe; not physically threatening or humiliating; and Plaintiff does not address its effect on her work performance. On these facts, no reasonable jury could conclude that Plaintiff was subjected to either severe or pervasive conduct. I do not doubt, as Plaintiff asserts, that a male entering the women's restroom while a female is in the restroom could frighten the female. That, however, did not occur to Plaintiff in this case. Defendant is entitled to judgment as a matter of law on these grounds.

## CONCLUSION

Differential treatment is, of course, the <u>sine qua non</u> of a discrimination claim. Despite the burden-shifting paradigm at play in such a case, the ultimate burden of proving intentional discrimination rests, at all times, with the plaintiff. <u>See</u> <u>Burdine</u>, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). In this case, Plaintiff has made clear her feelings that she has been poorly treated, and I empathize with her allegations of psychological injury. The laws, however, are aimed at illegal, and not inappropriate, erroneous, or unpleasant conduct. Plaintiff has not made a showing sufficient to establish the existence of an element essential to her claims of sexual and racial discrimination and retaliation, on which she would bear the burden of proof. The strictures of legal standards render this Court the inappropriate forum to redress any maltreatment Plaintiff

is alleged to have suffered.

An appropriate Order follows.

**ORDER**

AND NOW, this 26th day of June, 2009, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion for Summary Judgment (Docket No. [43]) is GRANTED.   The clerk shall mark this matter closed forthwith.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Chief Judge, U.S. District Court